Dockson Corporation v. Commissioner.
Dockson Corp. v. Commissioner
Docket No. 744.
United States Tax Court
1944 Tax Ct. Memo LEXIS 365; 3 T.C.M. (CCH) 185; T.C.M. (RIA) 44058; February 24, 1944
*365 Ralph W. Barbier, Esq., and Raymond H. Berry, Esq., for the petitioner. Melvin S. Huffaker, Esq., for the respondent. STERNHAGEN Findings of Fact and Memorandum Opinion The following deficiencies were determined: 1940
1941
Income Tax
$1,023.33
$ 7,995.37
Declared Value Excess-
Profits Tax
454.39
4,534.84
Excess-Profits Tax
1,297.81
14,452.80
The taxpayer assails the disallowance of deductions for salaries and for traveling expenses. Findings of Fact Petitioner is a Michigan corporation. It was incorporated as C. H. Dockson Company July 26, 1923, with an authorized capital of 5,000 common shares of $10 par value. In May, 1929, the capital was increased to 10,000 shares of $10 par value. On July 1, 1940, the name was changed to Dockson Corporation. In 1940, capital was increased by $8,700. It was engaged at Detroit, Michigan, in the manufacture of industrial equipment such as oxygen, acetylene and air regulators, welding and cutting torches and accessories, helmets and goggles. It handled about 700 different items manufactured either by it or under contract by others. Its tax returns were filed in Detroit. The shares were owned as follows: Dec. 31, 1940
Dec. 1, 1941
Dec. 31, 1941
C. H. Dockson
2,571 shares
2,808 shares
3,808 shares
Sterling H. Dockson
154 shares
279 shares
879 shares
H. E. Piggott
None
100 shares
600 shares
P. D. Holmes
None
50 shares
550 shares
B. Allen Aikens, Jr.
None
100 shares
100 shares
Harold S. Davis
524 shares
287 shares
287 shares
Ida J. Dockson (wife of C. H. Dockson)
3,009 shares
3,009 shares
3,009 shares
Mary M. Dockson (wife of Sterling H. Dockson)
154 shares
154 shares
154 shares
Totals
6,412 shares
6,787 shares
9,387 shares
*366 In June, 1941, the directors were C. H. Dockson, his wife and his son, Sterling H. Dockson. In June, 1941. the son succeeded Harold S. Davis as director and secretary-treasurer. No dividends were paid in 1938, 1939, 1940 or 1941. The balance sheets show a deficit of $2,673.58, January 1, 1939, and earned surplus and undivided profits of $3,494.95, December 31, 1939, $13,719.95, December 31, 1940, and $33,616.92, December 31, 1941. C. H. Dockson was president. The compensation paid to him, the net sales and profits before tax were as follows: Net
Profit
Compensation
Sales
Before Tax
1930
$10,000.00
$ 84,732.00
$ 43.00
1931
10,845.61
86,695.00
2,557.00
1932
8,450.00
108,586.00
(3,965.00)
Deflcit
1933
12,000.00
194,149.00
(1,853.00)
Deflcit
1934
18,000.00
222,363.00
83.00
1935
16,000.00
274,090.00
4,113.00
1936
16,000.00
277,426.00
5,799.00
1937
16,000.00
341,966.00
4,893.00
1938
8,316.72
187,477.00
(6,334.00)
Deflcit
1939
7,600.00
297,884.00
7,300.00
1940
21,050.00
447,744.00
12,411.00
1941
28,000.00
731,873.00
34,472.00
"The compensation paid to C. H. Dockson for the year 1940 consisted of $18,000.00 salary and two *367 bonuses * * * of $2,000.00 and * * * $1,050.00. The compensation received by C. H. Dockson for the year 1941 consisted of $18,000.00 salary and a bonus in the amount of $10,000.00, which bonus was paid in stock of petitioner." C. H. Dockson founded the business about 1921. He has been the president of petitioner and devoted all of his time to its business ever since. He has invented some forty-five devices used in the welding industry. His patents were never assigned to petitioner except one issued in 1941 covering an electric welding helmet shield, and this was assigned to the petitioner because his son, Sterling H., had worked on it. All these devices were used by petitioner without charge. About 60 to 70 per cent of petitioner's business is attributable to them. At a meeting on August 27, 1940, of the board of directors, then consisting of C. H. Dockson, his wife, and Harold S. Davis, the following resolution was adopted: "WHEREAS: For the many years Mr. C. H. Dockson, as President of the Dockson Corporation, received a salary from $16,000 to $18,000, but during the years 1938, 1939 and part of 1940, while the Corporation was restricted by agreement under a trust mortgage with *368 the R.F.C., he received only a portion of his regular salary. The Directors believing it to be proper and just that Mr. C. H. Dockson should receive that portion of his past salary which he did not receive during the years 1938, 1939 and part of 1940, and as a further reason the Directors believe that because of the many mechanical devices and patents which the Corporation has had the use of and to which a substantial part of the profits of the Corporation are directly attributable, Mr. C. H. Dockson should be compensated as above stated. It is therefore "RESOLVED: That the salary of Mr. C. H. Dockson for the year 1940 be set at $18,000 and that his salary continue at this sum until changed by the Board of Directors. And further that Mr. C. H. Dockson receive in lieu of a bonus for 1940 a sum which the Board of Directors shall deem just and proper to partially compensate Mr. C. H. Dockson for his reduction in salary during the years 1938 and 1939 which sum shall be in lieu of a bonus for the year 1940, and the amount shall be established at a meeting of the Board of Directors during the month of December, 1940 when the financial position of the Corporation can better be determined. *369 The sum so determined to be paid to Mr. Dockson for this purpose shall be paid to him during the month of December, 1940. "IT IS FURTHER RESOLVED: That in the future beginning during the year 1941 the Board shall pay a bonus to Mr. C. H. Dockson for his services over and above his regular salary as above declared in an amount which shall be equitable and just, as deemed by the Board, but in no case to exceed 20 per cent of the net income of the Corporation." Harold S. Davis was in the employ of petitioner from 1926 until about June, 1941. He was a director and secretary-treasurer, sales manager, and supervised the office work. When he learned in June, 1941, that his plan to purchase a half interest in the business upon the death of C. H. Dockson, to be partly financed with proceeds from an insurance policy upon the life of the latter, with which plan he thought Dockson was in accord, would not be carried out he resigned. His compensation was $7,534.09 for 1939; $11,520.47 for 1940, and $10,638.27 for the first six months of 1941, consisting of $2,700 base salary and $7,938.27 sales manager's commissions. This was upon the basis of salary of $450 a month and sales commission of 2 *370 1/2 per cent of net sales above $204,000 annually, a basis fixed January 1, 1937. Sterling H. Dockson is the son of C. H. Dockson. In June, 1931, upon his graduation from college he became a full-time employee as salesman at a salary of $25 a week. Prior to that time for about four years he had worked for petitioner in its manufacturing and repair shops during the summer vacation. After 1931, he received increases in salary until in 1933 he was $50paid a week as salesman. In 1934, he went on a commission basis and under that arrangement received approximately $5,000 to $6,000. In 1936 and 1937, he spent about 25 to 30 per cent of his time in the factory working on equipment problems. In about 1937, with the aid of his father he developed a face shield, for use in hazardous jobs. In 1940, his compensation was $7,333.72. When Davis resigned in June, 1941, Sterling was appointed sales manager and director and secretary-treasurer. His compensation during 1941 was $16,940.12, consisting of $2,050 salary, $8,358.48 regular salesman's commissions, and $6,531.64 bonus or overriding commission as sales manager from July 1, 1941, to December 31, 1941. He took $6,000 of such compensation in *371 petitioner's shares. Pressley Dickson Holmes was employed as office manager about July 1, 1941, after Davis resigned. He became secretary-treasurer at the end of December, 1941. He was an engineer, had studied accounting, and had been treasurer of a corporation in Chicago, from which he had once received a salary of $7,200 a year. During 1941, Holmes was paid $8,687, consisting of a salary of $2,187 and a bonus of $6,500. He took $5,000 of his compensation in stock of petitioner. This compensation was in accordance with the written offer made to him by C. H. Dockson. H. E. Piggott has been in the employ of petitioner for about 18 years. He is shop superintendent, in charge of factory operations, the purchase of raw materials, and the hiring and firing of factory employees. At the time Davis resigned and Holmes was employed he indicated that he would resign unless he received the same salary as Holmes. His total compensation for 1941 was $10,750.44 consisting of $3,600 salary, $1,150.44 salesman's commissions on his own sales, and a bonus of $6,000. $5,000 of such compensation was paid in petitioner's shares. Payment of bonuses as follows -
C. H. Dockson
$10,000.00
S. H. Dockson
6,531.64
P. D. Holmes
6,500.00
H. E. Piggott
6,000.00
*372 was recommended by C. H. Dockson at a meeting of the board of directors held on December 29, 1941, at which C. H. Dockson and his son were the directors present. Reasonable allowances for compensation for services actually rendered by the following persons are not in excess of: Year
Amount
1940
C. H. Dockson
$15,000.00
1941
C. H. Dockson
15,000.00
Sterling H. Dockson
16,940.12
P. D. Holmes
8,687.00
H. E. Piggott
10,750.44
In the early part of January, 1941, C. H. Dockson and his wife traveled by automobile to California. For about three weeks he called upon and entertained some jobber customers of petitioner. He suddenly became seriously ill. During his illness his baggage and records, including records of his traveling expenses, were lost. Shortly after his return early in March he estimated that the amount of traveling and entertainment expenses chargeable to petitioner was $875. The amount of such traveling expenses attributable to the taxpayer is $250. Memorandum Opinion STERNHAGEN, Judge: For 1940, the taxpayer deducted $21,050 as salary paid to C. H. Dockson, and the Commissioner, acting under Section 23 (a), Internal Revenue Code, disallowed $6,050 *373 as being in excess of a reasonable allowance for compensation for services actually rendered. The taxpayer has submitted evidence to prove that the amount paid is not in excess of a reasonable allowance. The question is purely one of fact determinable upon the evidence. We are unable to say from the evidence that the amount paid is no more than reasonable compensation for Dockson's services. He and his wife, in 1940, held 5,580 of the 6,412 shares outstanding, over 87 per cent; no dividends were ever declared, even though the net sales were $447,744, - more than they had ever been. The profit before tax was only $12,411. There is no sufficient basis in the evidence for an inference that the amount paid was reasonable in relation to the services Dockson, the president, performed for the corporation, and the fact has been found that $15,000 was a reasonable allowance for compensation. The additional $6,050 was, as shown by the evidence, excessive compensation for services and the disallowance is sustained. This finding is not based upon the fact stated by the Commissioner that $15,000 was fixed in an agreement with the Reconstruction Finance Corporation. For 1941, the Commissioner *374 determined that $32,031.64 was excessive compensation and disallowed the deduction. This, he detailed as C. H. Dockson, $13,000; S. H. Dockson, $6,531.64; P. D. Holmes, $6,500, and H. E. Piggott, $6,000. As to C. H. Dockson's compensation, we must, on the evidence, make the same finding as to the excess over $15,000 as has been made with regard to his compensation for 1940: that it was beyond reasonable compensation for the services rendered. Dockson and his wife still owned almost 87 per cent of the outstanding shares and no dividends were declared, although the net sales had grown to $731,873. From the omission of dividends, it is fair to infer that the excess over $15,000 was paid to Dockson in lieu of a distribution of earnings. Of Sterling H. Dockson's compensation the Commissioner disallowed deduction of $6,531.64. The mathematical method of arriving at this amount is not stated in the deficiency notice and is not clear in the brief; nor is the calculation of the amount paid to this employee. We may take it, however, that in 1941, he received $16,940.12, and that, of this, deduction was allowed of $10,408.48. The excess of $6,531.64 was called overriding commissions as sales *375 manager. The total amount paid may be compared with the $11,520.47 paid to his predecessor in 1940, and the $10,638.27 for the first six months of 1941, when the sales manager's commissions were $7,938.27. Under the circumstances of his employment and that his ownership of shares was comparatively insignificant, we have found that the amount actually paid to Sterling Dockson was not in excess of reasonable compensation for the services performed by him. The amount of $6,531.64 was erroneously included by the Commissioner in the disallowed deduction. The evidence as to the services and compensation of Holmes and Piggott in 1941 clearly supports the finding that the total amounts paid to them in that year were no more than reasonable compensation for the services performed. The disallowance of the deduction was therefore in error insofar as it included $6,500 paid to Holmes and $6,000 paid to Piggott. For 1941, therefore, the Commissioner's determination was in error in its disallowance of more than $13,000 of the deduction taken by the taxpayer. The evidence gives no satisfactory basis for the deduction in 1941 by the taxpayer of $875 as C. H. Dockson's traveling expenses. His estimate *376 of the amount is not persuasive. Under these circumstances, bearing in mind that the Court "should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making" (Cohan v. Commissioner, 39 Fed. (2d) 540, the finding has been made that the amount of traveling expenses attributable to the corporation is $250. The deduction of the excess over this amount was properly disallowed. Decision will be entered under Rule 50.